UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **FIRST FINANCIAL BANK, N.A.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | CAUSE NO.  1:11-cv-226-WTL-DML |
| ) | |
| **CITIBANK, N.A., and MISTY Y. McDONALD,** ) | |
| ) | |
| **Defendants.** ) | |

### ENTRY ON MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the motion for partial summary judgment filed by Defendant Misty McDonald (dkt. no. 79).  The motion is fully briefed and the Court, being duly advised, rules as follows.

### I.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor.  *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.").  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial."  *Id.*

## II.  BACKGROUND FACTS

The facts of record, viewed in the light most favorable to the non-moving party, Plaintiff First Financial Bank, N.A. ("First Financial"), are as follow.

Defendant Misty McDonald, an attorney in Terre Haute, Indiana, was contacted on June 23, 2010, by someone who purported to be seeking legal assistance.  Specifically, the person told McDonald that his Arizona company was seeking an attorney to help collect money it was owed by Accurate Manufacturing, an Indiana company.  They agreed that McDonald would be paid 10% of whatever money she collected.  On July 5, 2010, McDonald was informed by email that upon being informed that an attorney had been hired to collect the money, Accurate Manufacturing had agreed to make a partial payment on its debt by July 7th and a second payment by July 23rd.  On July 7th, McDonald received in the mail a letter that purported to be from Accurate Manufacturing along with a check.  The check purported to be Citibank Official Check No. 260356932, dated July 2, 2010, in the amount of $298,750.00; the remitter was listed as Accurate Manufactured Products Group, Inc., and the check was made payable to "Misty Y. McDonald, Attorney at Law" (the "Check").  McDonald wrote "For Deposit Only" on the back of the Check, took it to the local branch of her bank, First Financial, and deposited it into her IOLTA account.  McDonald understood from her conversation with First Financial employees that they would know whether the check was good by July 9th.

McDonald's purported client in Arizona requested that she wire 90% of the amount of the Check to the Bank of China in Beijing, China.  The client explained that it needed to pay its supplier in China as quickly as possible so that the supplier did not stop shipping them parts.

On the morning of July 9th, McDonald called First Financial and asked whether the

Check had "cleared." The person who answered the phone, whose name McDonald does not know, replied "Well, yeah, it's here." McDonald then went to the First Financial branch and, pursuant to the instructions she had received from her purported client in Arizona, wired 90% of the amount of the Check–$268,825.00–to the Bank of China. She then transferred the remaining 10%–approximately $29,000–into her own business account as her fee.

Citibank determined that no bank account existed for Accurate Manufacturing at Citibank and refused to pay the Check. First Financial first received notice of Citibank's nonpayment of the Check on July 14, 2010; it notified McDonald that same day that there was an issue with the Check. First Financial also attempted to recall McDonald's wire transfer, but was notified by the Bank of China on July 19th that it had paid the beneficiary of McDonald's wire transfer on July 12th and the request to return the wire transfer would not be honored. First Financial set off funds on deposit in McDonald's accounts at First Financial in the total amount of $26,172.21, but has been unable to recover the remaining $272,577.79.

## III. DISCUSSION

In her motion for partial summary judgment, McDonald moves for summary judgment with regard to First Financial's claim against her for check deception. That claim is brought pursuant to Indiana Code 34-24-3-1, which permits victims of the crime of check deception to bring a civil action against the perpetrator. In turn, the crime of check deception is set forth in Indiana Code 35-43-5-5, which provides, in relevant part:

> (a) A person who knowingly or intentionally issues or delivers a check, a draft, or an order on a credit institution for the payment of or to acquire money or other property, knowing that it will not be paid or honored by the credit institution upon presentment in the usual course of business, commits check deception, a Class A misdemeanor.

McDonald argues that her actions vis-a-vis the Check cannot constitute the crime of check deception because "the essence of the crime of check deception 'is the making or drawing of a check without sufficient funds for its payment,'" *Lewis v. State*, 774 N.E.2d 99, 103 (Ind. App. 2002) (quoting *Moore v. State*, 550 N.E.2d 318, 320 (Ind. 1990) (citing, in turn, *Hazelgrove v. State*, 237 Ind. 350, 145 N.E.2d 13 (1957)), and McDonald did not make or draw the Check, but simply endorsed it and deposited it into her account. The Court agrees that the facts of this case as alleged by First Financial do not seem to fit the check deception statute. That statute, when read as a whole, appears to apply to a person who, to use the vernacular, writes a check to pay for something knowing that the balance in his or her checking account is not (or will not be) sufficient to cover the check. Indeed, the Indiana Supreme Court has distinguished between the crime of check deception, "which is the making or drawing of a check without sufficient funds for its payment," and the crime of forgery, holding that check deception is not an included offense within the charge of forgery because "when a check is forged there is in fact no maker or drawer of the instrument." *Moore v. State*, 550 N.E.2d 318, 320 (Ind. 1990). This case seems to the Court to fall into the forgery category rather than the check deception category.

The Court need not decide whether the check deception statute could be applied to the general scenario alleged by First Financial, however, because the Court agrees with McDonald that First Financial's claim of check deception against her fails for another reason: First Financial has presented no evidence from which a reasonable juror could determine that McDonald knew that the check would not be honored.

The only direct evidence of record regarding the issue of McDonald's knowledge is McDonald's testimony that she did not know the check was not good and that she was the victim

of a scam.  First Financial argues that summary judgment is not appropriate because the jury could disbelieve McDonald's testimony.  However, "a movant's denial, in the form of a motion for summary judgment, is sufficient where the non-movant fails to come forward with facts to support an essential element of the non-movant's claim."  *Walter v. Fiorenzo*, 840 F.2d 427, 434-35 (7th Cir. 1988) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).  Indeed, as the *Walter* court noted, the Supreme Court ruled in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986), that "a motion for summary judgment, made in a case involving an element of intent, could not be defeated 'without offering any concrete evidence from which a reasonable juror could return a verdict in his favor and by merely asserting the jury might . . . disbelieve the defendants' denial.'"  *Walter*, 840 F.2d at 435 n.8 (quoting *Anderson*).[1]

First Financial also suggests that it has satisfied its burden of offering evidence regarding McDonald's knowledge by operation of the check deception statute itself, which provides:

> (c) The fact that a person issued or delivered a check, a draft, or an order, payment of which was refused by the drawee, constitutes prima facie evidence that the person knew that it would not be paid or honored. In addition, evidence that a person had insufficient funds in or no account with a drawee credit institution constitutes prima facie evidence that the person knew that the check, draft, or order would not be paid or honored.

Indiana Code 35-43-5-5(c).  In other words, the statute creates a presumption that a person who delivers a check that is refused by the drawee knew that it would be refused.  The Court agrees with McDonald that this presumption is inapplicable under the facts of this case.  "A

---

[1] The Indiana cases cited by First Financial regarding this issue apply the Indiana summary judgment standard, which is irrelevant in a federal case.  *Cf. Maroules v. Jumbo, Inc.*, 452 F.3d 639, 645 (7th Cir. 2006) ("Although state law provides the substantive law in a diversity action, summary judgment procedure is governed by federal law.") (citing *Jean v. Dugan*, 20 F.3d 255, 262-63 (7th Cir.1994), *Mayer v. Gary Partners and Co., Ltd.*, 29 F.3d 330, 334 (7th Cir.1994)).

presumption is valid in a criminal case when the fact presumed is more likely than not to flow from the fact on which the presumption is based." *Kindred v. State*, 524 N.E.2d 279, 302 (Ind. 1988) (citing *Walker v. State*, 467 N.E.2d 1248 (Ind. App. 1984); *United States v. Kelly*, 500 F.2d 72 (7th Cir. 1974)).  When a person writes a check, it is not unreasonable to presume that he is aware of the status of his bank account and whether the account has sufficient funds to cover the check.  However, it is not more likely than not that a person who merely deposits a check written by another is aware of the status of the check writer's bank account; it is simply not reasonable to presume such knowledge merely from the fact that the check is dishonored.  The presumption contained in Indiana Code 35-43-5-5(c) therefore is not valid in this case, and First Financial cannot rely upon it as evidence that McDonald had the requisite knowledge.

Finally, First Financial argues that McDonald's knowledge can be inferred from the following circumstantial evidence:

> (i) McDonald did little to verify the authenticity of the Check; (ii) McDonald delivered the Check to First Financial and, after wiring a portion of the funds from the Check to China, transferred approximately $29,925 into one of her accounts at First Financial as her collection of fees; (iii) the Check was just the first of the payments McDonald was to receive on a purported debt of $685,760.00, of which McDonald stood to receive 10%, for a possible total of $68,576.00; (iv) McDonald's receipt of the $298,750.00 came after her "client" had already been given assurance that the supposed dispute was resolved; and (v) McDonald collected her fees after having spoken to her purported client only once and after performing almost no legal services.

The Court finds as a matter of law that no reasonable jury could infer from these facts that McDonald knew the check would be dishonored.  Considering the facts in the light most favorable to First Financial, a reasonable jury certainly could conclude that she should have suspected that it might be dishonored, but that is not the same as knowledge.  In order for her to *know* that the check would be dishonored, McDonald would have had to have been conspiring

with whomever wrote the check, and the facts set forth above simply are not sufficient for a reasonable jury to find that to be the case. Accordingly, McDonald is entitled to summary judgment on First Financial's check deception claim.

## IV.  CONCLUSION

For the reasons set forth above, McDonald's motion for partial summary judgment (dkt. no. 79) is **GRANTED** and summary judgment is entered in favor of McDonald and against First Financial on Count Four of First Financial's Complaint.

SO ORDERED: 07/17/2012

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification