## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| **FIRST FINANCIAL BANK, N.A.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **CAUSE NO.  1:11-cv-226-WTL-DML** |
| ) | |
| **CITIBANK, N.A., and MISTY Y. McDONALD,** ) | |
| ) | |
| **Defendants.** ) | |

### ENTRY ON MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the motion filed by Plaintiff First Financial Bank, N.A.

("First Financial") seeking summary judgment with regard to its claims against Defendant

Citibank, N.A. ("Citibank") (dkt. no. 82).  The motion is fully briefed and the Court, being duly

advised, **GRANTS IN PART AND DENIES IN PART** the motion as set forth below.

### I.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if

the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  In ruling on a motion for summary judgment, the

admissible evidence presented by the non-moving party must be believed and all reasonable

inferences must be drawn in the non-movant's favor.  *Hemsworth v. Quotesmith.com, Inc.*, 476

F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view

the record in the light most favorable to the nonmoving party and draw all reasonable inferences

in that party's favor.").  However, "[a] party who bears the burden of proof on a particular issue

may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations,

that there is a genuine issue of material fact that requires trial."  *Id.*

## II.  BACKGROUND FACTS

The facts relevant to the instant motion, viewed in the light most favorable to Defendant

Citibank, the non-moving party, are as follow.

Defendant Misty McDonald, an attorney in Terre Haute, Indiana, deposited a check at her

local First Financial bank on July 7, 2010.  The check purported to be Citibank Official Check

No. 260356932, dated July 2, 2010, in the amount of $298,750.00; the remitter was listed as

Accurate Manufactured Products Group, Inc. ("AMPG"), and the check was made payable to

"Misty Y. McDonald, Attorney at Law" (the "Check").  McDonald believed the Check to be

partial payment of money owed by AMPG to a company that had recently engaged her services

to try to collect from AMPG.

First Financial has banking relationships with other institutions that are established by

contracts.  These relationships are referred to in the banking industry as correspondent banking

relationships. First Financial has a correspondent banking relationship with J.P. Morgan Chase,

N.A. ("Chase"), for the forward processing of checks.  As relevant to this case, "forward

processing" means the movement of a check that is deposited at a First Financial bank to the

"paying bank" of that check.  First Financial does not have a correspondent banking arrangement

with Chase for the downstream processing of checks –that is, the movement of checks from

paying banks back to First Financial for, among other things, providing notice of nonpayment.

Instead, the Federal Reserve Bank is First Financial's correspondent bank for downstream

processing.

 As is customary in the banking industry, First Financial created an electronic image of

the Check[1] for use in the forward and downstream processing of the Check.  Pursuant to its agreement with Chase, First Financial sent the Check to Chase for forward processing.  This was accomplished by including the imaged Check in a cash letter[2] to Chase dated July 7, 2010.

The following day, July 8, 2010, Chase sent an electronic image of the Check to Citibank.  Citibank determined that the account number on the Check did not exist and marked it "invalid account number, account unknown."  Citibank also determined that the endorsement of the depository bank (First Financial) was illegible.  However, the Check contained a "Sending R/T" number on it that indicated that it had come to Citibank from Chase.  Citibank therefore returned the Check for nonpayment to Chase.  In order to accomplish this, Citibank sent a notice to Chase through the Electronic Advanced Return Notification System ("EARNS") at 8:34 p.m. on July 8, 2010, that indicated that the Check was being returned for an invalid account number. Citibank then sent the Check and its accompanying cash letter to the Federal Reserve Bank.

At 7:10 a.m. on July 9, 2010, Chase opened the EARNS notice that advised it that Citibank was returning the Check because it bore an invalid account number.  Chase notified First Financial that the Check had been returned by sending two letters by regular U.S. mail, one dated July 9th and the other dated July 13th.  First Financial did not receive either letter until at least July 14th.  Chase also sent First Financial a fax bearing the image of the Check with the notice of nonpayment from Citibank on July 14th.  First Financial received an EARNS notice of

---

[1]It is the Court's understanding that Defendant Citibank only dealt with this electronic image, not the actual paper check.  However, the parties nonetheless refer to Citibank's actions vis-a-vis "the Check," so the Court will as well.

[2]A cash letter is a compilation of numerous checks that is created by a bank for the purpose of packaging items for distribution to their correspondent banks in the forward or downstream processing of checks.

3

nonpayment on July 15th.

In the meantime, on July 9, 2010, at 12:56 p.m., First Financial completed a wire transfer for McDonald of 90% of the amount of the Check–$268,825.00–to the Bank of China in Beijing, China.  When it learned that the check had been returned by Citibank, First Financial attempted to recall McDonald's wire transfer, but was notified by the Bank of China on July 19th that it had paid the beneficiary of McDonald's wire transfer on July 12th and the request to return the wire transfer would not be honored.  First Financial set off funds on deposit in McDonald's accounts at First Financial in the total amount of $26,172.21, but has been unable to recover the remaining $272,577.79.

## III.  DISCUSSION

First Financial argues that "[t]he undisputed material facts of this case demonstrate that Citibank failed to provide timely and proper notice of nonpayment and return of a check, thereby breaching warranty obligations to First Financial and causing damages in the amount of the check's face value, plus interest and expenses, less those amounts mitigated by First Financial's actions." First Financial Brief at 1.  First Financial therefore seeks summary judgment on all of its claims against Citibank.

### A.  Legal Theories Not Contained in the Complaint

As an initial matter, Citibank argues that the Court should not consider certain arguments asserted by First Financial in the instant motion because they relate to causes of action that are not contained in First Financial's Complaint.  Specifically, while First Financial asserts three counts against Citibank in its Complaint–breach of warranty under 12 C.F.R. § 229.34(a)(1), breach of warranty under 12 C.F.R. § 229.34(b)(1), and breach of warranty under 12 C.F.R. §

229.34(c)(3)–in the instant motion First Financial also argues that Citibank's actions vis-a-vis the Check violated various obligations under 12 C.F.R. § 229.30(b), 12 C.F.R. § 229.33(a), and 12 C.F.R. § 229.38(a).  Citibank argues that "[e]ven under the most liberal interpretation of notice pleading case law, [First Financial's] assertion of causes of action that are being identified for the first time in its Motion for Summary Judgment should not be permitted by this Court." Citibank Response at 12.

It is not surprising that Citibank does not cite any cases in support of this argument, because precedent is to the contrary.  Indeed, the Seventh Circuit Court of Appeals has "stated repeatedly (and frequently) that a complaint need not plead legal theories, which can be learned during discovery."  *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (citing *Smith v. Med. Benefit Adm'rs Group, Inc.*, 639 F.3d 277, 283 n. 2 (7th Cir. 2011); *Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 561–62 (7th Cir. 2011); *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011) ("A complaint need not identify legal theories, and specifying an incorrect legal theory is not a fatal error.")).  Indeed, "[e]ven citing the wrong statute needn't be a fatal mistake, provided the error is corrected in response to the defendant's motion for summary judgment and the defendant is not harmed by the delay in correction." *Hatmaker v. Memorial Med. Cntr.*, 619 F.3d 741, 743 (7th Cir. 2010) (citing *Ryan v. Illinois Dept. of Children & Family Servs.*, 185 F.3d 751, 764 (7th Cir. 1999)).  Citibank has not asserted any prejudice from the fact that First Financial did not identify all of its legal theories in its Complaint, and, accordingly, the Court will consider each of the theories asserted in First Financial's motion for summary judgment.

## B.  Citibank's Duties Regarding Returning the Check

Citibank's obligations with regard to the Check once it decided to dishonor it were governed by what is referred to as "Regulation CC"–a set of implementing regulations promulgated pursuant to the Expedited Funds Availability Act, 12 U.S.C. § 4010 et. seq. Subpart C of Regulation CC, which is found at 12 C.F.R. § 229.30 et seq., sets forth a paying bank's responsibility for the return of a check; First Financial argues that Citibank violated several of Regulation CC's requirements.  The Court will address each of First Financial's arguments in turn.

### *1.  Failure to Return the Check Expeditiously*

A paying bank that has decided not to pay a check must return the check "expeditiously." 12 C.F.R. § 229.30(a).  In order to do so, it "may send [the] returned check to the depositary bank, or to any other bank agreeing to handle the returned check expeditiously under § 229.31(a)."  12 C.F.R. § 229.30(a).  Citibank failed to comply with this requirement when it returned the Check to Chase[3] because Chase had no agreement with First Financial to handle returned checks expeditiously on First Financial's behalf.  Citibank argues that it nonetheless complied with Regulation CC because it was unable to identify the depositary bank with respect to the Check and therefore was permitted to return the Check to Chase pursuant to 12 C.F.R. § 229.30(b), which provides:

> A paying bank that is unable to identify the depositary bank with respect to a
> check may send the returned check to any bank that handled the check for
> forward collection even if that bank does not agree to handle the check
> expeditiously under § 229.31(a).

---

[3]As noted in the recitation of facts, this was accomplished by sending an EARNS notice to Chase and the Check and accompanying case letter to the Federal Reserve Bank; however, the parties refer to Citibank's return of the Check to Chase, so the Court will as well.

6

The problem with Citibank's argument is that the evidence of record does not support its assertion that it was unable to identify the depositary bank from the information on the back of the Check.  Citibank points to testimony by witnesses who say that the endorsement by First Financial was "not clear."  However, Citibank also states that "[t]he image of the Check received by Citibank on July 8, 2010 is depicted in CB 00020," and the Court finds, as a matter of law, that no reasonable jury could examine CB 00020 and conclude that Citibank was unable to decipher First Financial's endorsement.[4]  Therefore 12 C.F.R. § 229.30(b) did not apply to Citibank's return of the Check.

So Citibank was required to expeditiously return the Check to First Financial, and it failed to do so.  The next question is what, if any, liability flows from that failure.  Regulation CC provides:

> A bank shall exercise ordinary care and act in good faith in complying with the requirements of this subpart. A bank that fails to exercise ordinary care or act in good faith under this subpart may be liable to the depositary bank, the depositary bank's customer, the owner of a check, or another party to the check. *The measure of damages for failure to exercise ordinary care is the amount of the loss incurred, up to the amount of the check, reduced by the amount of the loss that party would have incurred even if the bank had exercised ordinary care.* A bank that fails to act in good faith under this subpart may be liable for other damages, if any, suffered by the party as a proximate consequence. Subject to a bank's duty to exercise ordinary care or act in good faith in choosing the means of return or notice of nonpayment, the bank is not liable for the insolvency, neglect, misconduct, mistake, or default of another bank or person, or for loss or destruction of a check or notice of nonpayment in transit or in the possession of others. This section does not affect a paying bank's liability to its customer under the U.C.C. or other law.

---

[4]Citibank does not allege that the information on the back of the check was legible but that it was unable to determine which of the two banks who had endorsed the check–Chase and First Financial–was the depositary bank.  Rather, the Court understands Citibank to allege that First Financial's endorsement was not clear enough to permit it to determine that it was made by First Financial.  The document itself belies this conclusion.

12 C.F.R. § 229.38(b) (emphasis added).  The Court has no trouble finding, as a matter of law

based upon the evidence of record, that Citibank failed to exercise ordinary care when it failed to

identify First Financial as the depositary bank.  The inquiry, then, is the amount of First

Financial's loss, if any, that would have occurred even if Citibank had exercised ordinary care

and returned the Check to First Financial expeditiously.

      Regulation CC provides two ways in which a paying bank can satisfy the expediency

requirement.  The first is the "two-day test,"[5] which provides, in relevant part:

> A paying bank returns a check in an expeditious manner if it sends the returned
> check in a manner such that the check would normally be received by the
> depositary bank not later than 4:00 p.m. (local time of the depositary bank) of . . .
> [t]he second business day following the banking day on which the check was
> presented to the paying bank.

12 C.F.R. § 229.30(a)(1).  Pursuant to this test, Citibank unquestionably[6] would have satisfied its

obligation to return the Check expeditiously if First Financial had received the Check by 4:00

p.m. on Monday, July 12, 2010, which was the second business day following Thursday, July 8,

the day the Check was presented to Citibank.  By that time most, if not all,[7] of the damage was

---

[5]Regulation CC actually sets forth both a "two-day test" and a "four-day test," but the
four-day test is obsolete because there is now only one nationwide check processing region.  *See*
75 Fed. Reg. 219-01 (Jan. 5, 2010) ("Subsequent to these amendments [effective February 27,
2010], there will only be a single check-processing region for purposes of Regulation CC and
there will no longer be any checks that are nonlocal.").

[6]The Court notes that Regulation CC does not require that a returned check actually reach
the depositary bank by the two-day deadline, but only that the method of return used would
"normally" get the check to the depositary bank by the deadline.  Therefore 4:00 on July 12 was
the earliest the check would have had to get to First Financial in order to satisfy the two-day test.

[7]Neither party addresses the fact that some of First Financial's losses clearly were not
caused by the wire transfer to China.  The Check was for $298,750.00; the wire transfer was for
$268,825.00, leaving $29,925.00, which McDonald transferred into her personal account at First
Financial.  First Financial was able to recover $26,172.21 from McDonald's account; the record
does not indicate when McDonald withdrew the remaining approximately $3700.00 from her

already done, as McDonald wired $268,825.00 to the Bank of China on July 9.[8]  While it is certainly possible that First Financial could demonstrate that it was damaged by Citibank's failure to expeditiously return the check–if, for example, it can show that it would have been able to reverse the wire transfer had the check been returned by 4:00 p.m. on July 12–it does not point to any evidence to support such a finding.  Accordingly, First Financial has not demonstrated that it is entitled to summary judgment on this claim.  However, First Financial is entitled to summary judgment as to the following parts of its claim:  (1) Citibank failed to comply with the requirement of 12 C.F.R. § 229.30(a) that it return the Check expeditiously; and (2) Citibank failed to exercise reasonable care in complying with its obligation under 12 C.F.R. § 229.30(a).  Therefore, the only issue remaining for trial with regard to this claim is whether any damages were caused by Citibank's failure to return the Check expeditiously.

### 2.  Failure to Provide Timely Notice of Dishonor

In addition to the obligation to return a dishonored check expeditiously, when the check at issue is for $2500.00 or more, a payor bank is required to "provide notice of nonpayment such that the notice is received by the depositary bank by 4:00 p.m. (local time) on the second business day following the banking day on which the check was presented to the paying bank." 12 C.F.R. § 229.33(a).  Citibank failed to satisfy this requirement, as it did not provide notice to First Financial that it was not going to pay the Check.[9]

--------------------------------------------------

account.

[8]The second test is the "forward collection test," which is set forth in 12 C.F.R. § 229.33(a)(2).  First Financial does not provide any evidence regarding when it would have received the Check if Citibank had satisfied this test.

[9]Citibank argues that First Financial and Chase had an agency relationship such that under federal common law any notice it gave to Chase was imputed to First Financial.  In the

Again, however, Citibank's failure does not translate into liability to First Financial unless that failure proximately caused a loss by First Financial.  And again, First Financial has not presented any evidence that this is the case, inasmuch as the wire transfer occurred prior to 4:00 p.m. on July 12, the second business day following the banking day on which the Check was presented to Citibank.  So while First Financial is entitled to summary judgment on the issue of whether Citibank failed to comply with 12 C.F.R. § 229.33–it did–the question of whether Citibank has any liability for that failure remains for trial.

### 3. Incorrect Routing of the Check

First Financial also asserts that Citibank incorrectly encoded the Check to indicate that Chase was the bank of first deposit.  This, First Financial argues, constituted a breach of the warranty set forth in 12 C.F.R. § 229.34(c)(3):

> Each bank that presents or transfers a check or returned check warrants to any bank that subsequently handles it that, at the time of presentment or transfer, the information encoded after issue in magnetic ink on the check or returned check is correct. For purposes of this paragraph, the information encoded after issue on the check or returned check includes any information placed in the MICR line of a substitute check that represents that check or returned check.

The Court is unable to discern from the evidence cited by First Financial that Citibank's actions

---

absence of any authority to support this argument, the Court declines to apply general agency principles to alter the specific requirements of Regulation CC regarding to whom notice must be given.  Citibank also argues that First Financial had actual notice (from Chase) on July 12, 2010, that the Check had been returned.  Citibank cites the deposition testimony of bank manager William Farris, who testified that he was notified by his assistant on that date while vacationing that the check was being returned.  That testimony does not indicate that First Financial was notified by Chase prior to the 4:00 p.m. deadline, however; therefore even if actual notice from a source other than the payor bank can satisfy 12 C.F.R. § 229.33, Citibank has not presented any evidence that First Financial received actual notice by the deadline.  (Obviously if actual notice from Chase had occurred prior to the deadline, that fact would be relevant to the issue of the proximate cause of any damages, regardless of whether the actual notice satisfied the regulation's notice requirement.)

breached this warranty.  The warranty applies to "the information encoded after issue in

magnetic ink" on the Check.  The testimony cited by First Financial indicates that the Check was

prepared for return by Citibank manually–that is, that a Citibank employee, Mr. Gandhi,

manually placed information on the Check.  Perhaps it is obvious to one in the banking industry,

but, unfortunately, the Court is unaware whether the information Mr. Gandhi manually put on

the Check was "encoded . . . in magnetic ink."  Accordingly, the Court cannot determine whether

Citibank breached this warranty, and First Financial is not entitled to summary judgment on this

claim.

Even assuming that a breach of the encoding warranty occurred, First Financial has not

presented evidence from which the Court could determine whether it suffered injury as a result

of that breach.  First Financial seems to assert that the EARNS notice that was sent to Chase was

subject to the encoding warranty; in other words, First Financial argues that if *the Check* had

been encoded properly then *the EARNS notice* would have been sent to First Financial instead of

Chase and First Financial would have received the notice as quickly as Chase received it.

There are two problems with this argument.  First, there is no evidence regarding when

First Financial would have received an EARNS notice sent by Citibank; perhaps Citibank has a

faster means of sending notices to Chase than it does to First Financial.  More fundamentally,

however, the plain language of 12 C.F.R. § § 229.34(c)(3) appears to apply only to information

encoded on a check, not to an EARNS notice.  While perhaps this is incorrect (and, again, that

fact might be obvious to someone in the banking industry), all the Court has to go on is the

evidence to which the parties have cited, and they have cited to nothing that would contradict the

plain language of the regulation.  In this case, while the EARNS notice was sent to Chase, the

11

Check itself was sent by Citibank to the Federal Reserve Bank.  First Financial has submitted no evidence regarding when it would have received the Check from the Federal Reserve Bank if it had been encoded properly.  All the Court knows is that the Federal Reserve Bank had agreed to return checks to First Financial expeditiously, which means that pursuant to 12 C.F.R. § 229.31 it had a duty to send the Check to First Financial in a manner such that it would normally have been received by First Financial no later then 4:00 p.m. on July 12.  As discussed above, that would have been too late to prevent the wire transfer.

## C. Failure to Comply with the Midnight Deadline

First Financial next argues that Citibank breached the warranty set forth in 12 C.F.R. § 229.34(a):

> Each paying bank or returning bank that transfers a returned check and receives a settlement or other consideration for it warrants to the transferee returning bank, to any subsequent returning bank, to the depositary bank, and to the owner of the check, that–
>
> > (1) The paying bank, or in the case of a check payable by a bank and payable through another bank, the bank by which the check is payable, returned the check within its deadline under the U.C.C., Regulation J (12 C.F.R. Part 210), or § 229.30(c) of this part.

First Financial argues that Citibank breached this warranty by failing to comply with the U.C.C.'s "midnight deadline."  The U.C.C.'s midnight deadline is defined in Indiana Code 26-1-4-104(a)(11)[10] as "midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later."  First Financial argues that Citibank failed to "return" the Check prior to its

----

[10]All references to the U.C.C. herein refer to the U.C.C. as adopted and codified by Indiana.

midnight deadline, which was midnight on July 9, 2010.  Pursuant to Indiana Code 26-1-3-301(4)(b), "[a]n item is returned . . . when it is sent or delivered to the bank's customer or transferor or pursuant to instructions."

First Financial asserts, without explanation, that Citibank was required to return the Check *to First Financial* by the midnight deadline.  The Court does not believe that to be the case.  The definition of "return" required Citibank to return the Check to Citibank's "transferor," which was Chase, not First Financial.  First Financial does not allege that Citibank failed to return the check to *Chase* before the midnight deadline;[11] accordingly, First Financial is not entitled to summary judgment on this issue.

The Court notes that First Financial's argument regarding the midnight deadline misses the mark in another way.  While liability for failure to comply with the requirements of Regulation CC hinges on whether the failure was the proximate cause of the loss claimed, it appears that a bank that misses the midnight deadline under the U.C.C. can be liable under the U.C.C. for the amount of the check at issue even if no loss was caused by the missed deadline.  First Financial argues that this "strict liability" standard is applicable to a bank that breaches the warranty set forth in 12 C.F.R. § 229.34(a) by missing the midnight deadline.  This is incorrect.  A breach of warranty claim under Regulation CC requires the failure to exercise ordinary care in complying with one of Regulation CC's requirements and a resulting loss.  In order to take advantage of the "strict liability" for missing the midnight deadline, the claim must be brought

---

[11]Neither party indicates when the Federal Reserve Bank sent the Check to Chase. However, First Financial does not argue that Citibank violated the midnight deadline because it was late returning the Check to Chase; it argues only that "Citibank did not return [the Check] to First Financial by midnight on July 9, 2010; it returned the item to Chase."  First Financial Brief at 17.

under the U.C.C. itself,[12] not as a breach of warranty claim under Regulation CC premised on the failure to meet the midnight deadline.  The Court does not read First Financial's Complaint or briefs as indicating that it is pursuing a claim under the U.C.C. directly.[13]

### D. Citibank's Duty to Exercise Ordinary Care

First Financial makes several arguments under the subheading "Citibank failed to exercise ordinary care and good faith in handling the Check."  First, First Financial argues that had it received notice of nonpayment on July 8 when Chase received notice from Citibank, then it would have been able to stop the wire transfer.  That may be true, but it is irrelevant.  Citibank had no duty under Regulation CC to provide notice until July 12, and Citibank cannot be held liable under Regulation CC for failing to act as quickly as possible, but rather only for failing to comply with its obligations under Regulation CC.  Therefore the relevant inquiry is not whether Citibank could have prevented First Financial's loss, but rather whether Citibank was required by Regulation CC to act in such a way that First Financial's loss would have been prevented.  As set forth above, the record as it stands does not compel the conclusion that First Financial's loss

---

[12] As Citibank points out, Regulation CC provides that "[i]f a paying bank fails both to comply with § 229.30(a) and to comply with the deadline for return under the U.C.C., Regulation J (12 CFR Part 210), or § 229.30(c) in connection with a single nonpayment of a check, the paying bank shall be liable under either § 229.30(a) or such other provision, but not both."  12 C.F.R. § 229.38(b).  Citibank argues that under this provision First Financial cannot pursue a claim under both the U.C.C. and § 229.34; rather, it was required to "pick its poison" and it "made its choice, which was to seek recovery under Regulation CC."  Citibank Response at 12.  While it is true that Citibank could not be required to pay damages pursuant to both provisions for the same late notice, that does not preclude First Financial from asserting alternative claims under both in this case.

[13] Perhaps the reason for this is that under the U.C.C. liability attaches if a payor bank fails to "pay or return the item or send notice of dishonor until after the midnight deadline," Ind. Code 26-1-4-302(a)(1), and Citibank did, in fact, send notice of dishonor of the Check (to Chase) prior to the midnight deadline.

would have been avoided, in whole or in part, if Citibank had complied with Regulation CC.

Next, First Financial argues that "[a]dditional evidence of Citibank's lapse in ordinary care and good faith in handling the Check, providing proper notice of nonpayment, and returning the Check to the depositary bank is seen in its utter failure to detect the Check as a suspicious item in need of further investigation."  First Financial Brief at 22.  Citibank should have been suspicious of the Check, First Financial argues, because "[a]pproximately one week prior to receipt of the Check, Citibank received another strikingly similar check that was marked 'no account known' by Citibank. The other check shared many similarities to the Check, including that it also was made payable to an attorney for the same amount as the Check, with a nearly identical check number as the Check and matching maker account numbers."  *Id.*

This argument is specious.  As the Court has noted several times, Citibank's liability under 12 C.F.R. § 229.38(b) is for the failure to exercise ordinary care in complying with the requirements of Regulation CC.  First Financial points to no provision of Regulation CC that requires Citibank to conduct investigations into suspicious items.  And even if such an obligation exists, it certainly would not have been triggered in time to put First Financial on notice.  No "apparent pattern of counterfeit Citibank checks" could possibly have been identified based upon one such check; the Check at issue in this case was only the second in the alleged "pattern."  It is folly to suggest that the exercise of ordinary care required Citibank to notify "banks across the country" that they should be on the lookout for counterfeit Citibank checks made payable to attorneys simply because Citibank had seen one such check.

Finally, First Financial argues that Citibank failed to exercise ordinary care when it provided incorrect information to the Federal Reserve Bank in response to First Financial's

claim for late notice after First Financial learned that the Check had been returned.  Again, First

Financial does not point to any requirement of Regulation CC that these actions violated, and

provides no other basis for Citibank to be held liable for any inaccurate response it may have

made to the Federal Reserve Bank.

### E.  Citibank's Comparative Fault Argument

Citibank argues at length in its response to the instant motion that First Financial's own

negligence caused or contributed to its damages and that Regulation CC provides for a reduction

of any award based upon comparative fault.  Because this issue may be relevant at trial, the

Court will address it now.

Regulation CC does, indeed, provide:

> If a person, including a bank, fails to exercise ordinary care or act in good faith
> under this subpart in indorsing a check (§ 229.35), accepting a returned check or
> notice of nonpayment (§§ 229.32(a) and 229.33(c)), or otherwise, the damages
> incurred by that person under § 229.38(a) shall be diminished in proportion to the
> amount of negligence or bad faith attributable to that person.

12 C.F.R. § 229.38(c).  Citibank's comparative fault argument is two-fold.  First, Citibank

asserts that First Financial's negligence caused its endorsement to be unreadable and caused

Citibank to be unable to identify it as the depositary bank.  The Court has already resolved this

issue, inasmuch as it has determined, as a matter of law, that Citibank could have identified First

Financial had it exercised ordinary care.

Citibank also points to numerous ways in which it alleges bank manager Farris was

negligent:

> Mr. Farris was in the best position to prevent this loss to FFB. Even though he
> had worked for FFB for over thirty years, he lacked general information about
> check processing, including: (1) Mr. Farris did not know about any deadlines
> imposed on the paying bank for returning notice of dishonor; (2) Farris ignored

> FFB's own Funds Availability Policy by making the funds from the Check
> immediately available or available on the day following the Check's deposit; (3)
> Farris erroneously believed that FFB had to make the entirety of the funds from
> the Check available to Ms. McDonald on the morning following her deposit; (4)
> Farris failed to investigate suspicious characteristics of the Check at the time of
> its deposit; (5) Farris failed to contact Citibank to verify authenticity of the
> Check; and (6) Farris made no inquiry about the Check before he approved the
> wire transfer on July 9th. . . . At a minimum, there is an issue of fact as to whether
> FFB exercised reasonable care – as Regulation CC requires of it – and whether
> such reasonable care would have prevented FFB's own loss.

The problem with this argument is that even assuming Farris failed to exercise reasonable care as

Citibank claims, none of his alleged actions or omissions are relevant to the comparative fault

inquiry under Regulation CC, which requires the failure to exercise ordinary care "under this

subpart." Citibank points to no provision in Regulation CC that required Farris to do or refrain

from doing any of the things it alleges he did or failed to do that led to First Financial's damages.

Accordingly, there is no evidence to support a finding of comparative fault in this case.

## IV. CONCLUSION

For the reasons set forth above, First Financial's motion for summary judgment is

**GRANTED IN PART** in that the Court finds the following as a matter of law: (1) Citibank

failed to comply with the requirement of 12 C.F.R. § 229.30(a) that it return the Check

expeditiously; (2) Citibank failed to exercise reasonable care in complying with its obligation

under 12 C.F.R. § 229.30(a); and (3) Citibank failed to comply with the notice requirement set

forth in 12 C.F.R. § 229.33. First Financial's motion is **DENIED** in all other respects, including

whether Citibank's failures to comply with Regulation CC as just enumerated caused any injury

to First Financial.

SO ORDERED: 07/27/2012

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

17

Copies to all counsel of record via electronic notification