UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **FIRST FINANCIAL BANK, N.A.,** )<br>)<br>  Plaintiff, )<br>)<br>  vs. )<br>)<br>**CITIBANK, N.A., and MISTY Y. McDONALD,** )<br>)<br>  Defendants. ) | CAUSE NO.  1:11-cv-226-WTL-DML |

### ENTRY ON MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the motion for partial summary judgment filed by Plaintiff First Financial Bank, N.A. ("First Financial") against Defendant Misty McDonald (dkt. no. 86).  The motion is fully briefed and the Court, being duly advised, **GRANTS IN PART AND DENIES IN PART** the motion as set forth below.

### I.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor.  *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.").  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial."  *Id.*

## II. RELEVANT FACTS

This is the third in a trilogy of summary judgment rulings in this case. The Court assumes that the reader is familiar with its two previous rulings and therefore familiar with the events out of which this case arises. Therefore, this recitation of facts generally is limited to those facts that are directly relevant to the issues resolved herein. Those facts, viewed in the light most favorable to McDonald, the non-moving party, are as follow.

McDonald, an attorney in Terre Haute, Indiana, was contacted on June 23, 2010, by someone who purported to be seeking legal assistance. Specifically, the person told McDonald that his Arizona company was seeking an attorney to help collect money it was owed by Accurate Manufacturing, an Indiana company. They agreed that McDonald would be paid 10% of whatever money she collected. On July 5, 2010, McDonald was informed by email that upon being informed that an attorney had been hired to collect the money, Accurate Manufacturing had agreed to make a partial payment on its debt by July 7th and a second payment by July 23rd. On July 7th, McDonald received in the mail a letter that purported to be from Accurate Manufacturing along with a check. The check purported to be Citibank Official Check No. 260356932, dated July 2, 2010, in the amount of $298,750.00; the remitter was listed as Accurate Manufactured Products Group, Inc., and the check was made payable to "Misty Y. McDonald, Attorney at Law" (the "Check"). McDonald wrote "For Deposit Only" on the back of the Check, took it to the local branch of her bank, First Financial, and deposited it into her IOLTA account. During the course of that transaction, McDonald explained to bank manager Bill Farris that the check related to a client she had never represented before and did not know. She inquired of Farris when the bank would know if the check was good. Farris replied that they

would know by the morning of Friday, July 9th. McDonald replied that she "definitely won't do anything with this until I know it's good." McDonald Deposition at 27.

McDonald's purported client in Arizona requested that she wire 90% of the amount of the Check to the Bank of China in Beijing, China. The client explained that it needed to pay its supplier in China as quickly as possible so that the supplier did not stop shipping them parts.

On the morning of July 9th, McDonald called First Financial and asked whether the Check had "cleared." The person who answered the phone, whose name McDonald does not know, replied "Well, yeah, it's here." McDonald then went to the First Financial branch and, pursuant to the instructions she had received from her purported client in Arizona, wired 90% of the amount of the Check–$268,825.00–to the Bank of China. She then transferred the remaining 10%–approximately $29,000–into her own business account as her fee.

The wire transfer request was reviewed by bank manager Farris, who was tasked with determining whether McDonald's account had "bonafide funds" in it to cover the wire transfer. It was then reviewed by another bank employee, who was tasked with confirming that Farris had conducted the required inquiry.

Citibank determined that no bank account existed for Accurate Manufacturing at Citibank and refused to pay the Check. First Financial first received notice of Citibank's nonpayment of the Check on July 14, 2010; it notified McDonald that same day that there was an issue with the Check. First Financial also attempted to recall McDonald's wire transfer, but was notified by the Bank of China on July 19th that it had paid the beneficiary of McDonald's wire transfer on July 12th and the request to return the wire transfer would not be honored. First Financial set off funds on deposit in McDonald's accounts at First Financial in the total amount

of $26,172.21, but has been unable to recover the remaining $272,577.79.

## III. DISCUSSION

In its motion for partial summary judgment, First Financial moves for summary judgment with regard to its claim against McDonald for breach of the transfer warranties set forth in Ind. Code 26-1-3.1-416(a), which provides, in relevant part:

> A person who transfers an instrument for consideration warrants to the transferee and, if the transfer is by endorsement, to any subsequent transferee that: (1) the warrantor is a person entitled to enforce the instrument; (2) all signatures on the instrument are authentic and authorized; (3) the instrument has not been altered.

McDonald concedes, as she must, that she breached these warranties by presenting a counterfeit check to First Financial for deposit into her account and that the transfer warranties are not disclaimable. Accordingly, First Financial is entitled to summary judgment on that issue. McDonald does not concede, however, that First Financial is entitled to any damages for that breach and, for the reasons set forth below, the Court finds that First Financial is not entitled to summary judgment on the issue of damages.

Indiana Code 26-1-3.1-416(b) provides that "[a] person to whom the warranties under subsection (a) are made and who took the instrument in good faith may recover from the warrantor as damages for breach of warranty an amount equal to the loss suffered as a result of the breach, but not more than the amount of the instrument plus expenses and loss of interest incurred as a result of the breach." McDonald argues that a question of fact exists regarding whether it was her breach that caused First Financial's loss or whether it was First Financial's own negligence.

First, McDonald argues that First Financial failed to exercise ordinary care when it

endorsed the Check[1] because its endorsement was illegible. In light of the fact that the Court has ruled as a matter of law that the endorsement was not illegible,[2] this argument is without merit.

Next, McDonald, citing *Branch Banking & Trust Co. v. Witmeyer*, 2011 WL 3297682 (E.D. Va. 2011), argues that First Financial had a common law duty to use ordinary care in its communications with her, its customer, and that it breached that duty by telling her that the Check had cleared when it had not. *Witmeyer* is directly on point and does, indeed, support McDonald's argument. The problem is that *Witmeyer* applies Virginia law, and McDonald neither points to any case applying Indiana law in which a similar duty has been found nor cites to any principle of Indiana law which would guide this Court in determining whether the Indiana Supreme Court would resolve the issue in the same way as the *Witmeyer* court did. The Court declines to connect these dots on McDonald's behalf. *See Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring) ("Our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.").

Finally, McDonald argues that the facts of record viewed in the light most favorable to her support the defense of equitable estoppel. First Financial concedes that "it is conceivable that a party can assert an equitable estoppel defense to bar a transfer-warranty claim" but notes that "McDonald does not cite to any Indiana cases establishing such a defense." First Financial Reply at 1. McDonald does, however, cite to *Kacak v. Bank Calumet, N.A.*, 869 N.E.2d 1239

---

[1] Indiana Code 26-1-4-202 provides that a collecting bank must exercise ordinary care in presenting an item.

[2] This ruling occurred after the instant motion was briefed, so McDonald cannot be faulted for making the argument.

(Ind. App. 2007), in which the court noted the following:

> We further recognize that the UCC specifically provides that principles of law and equity supplement the provisions of the UCC. See I.C. § 26–1–1–103. In other words, where not specifically provided for by statute, a bank may be accountable for making material misrepresentations under a theory of actual or constructive fraud or some other principle of law and equity which may be applicable to the particular situation.

*Kacak v. Bank Calumet, N.A.*, 869 N.E.2d 1239, 1243 (Ind. App. 2007) (footnote omitted). The Court agrees with McDonald that Indiana law recognizes equitable estoppel as an available defense to a U.C.C. breach of warranty action such as the one advanced by First Financial in this case.

First Financial also argues that the facts as alleged by McDonald cannot, as a matter of law, support an equitable estoppel defense. The Court disagrees. Under Indiana law, "'The party claiming equitable estoppel must show its (1) lack of knowledge and of the means of knowledge as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) action based thereon of such a character as to change his position prejudicially.'" *Town of New Chicago v. City of Lake Station ex rel. Lake Station Sanitary Dist.*, 939 N.E.2d 638, 653 (Ind. App. 2010) (quoting *Money Store Inv. Corp. v. Summers*, 849 N.E.2d 544, 547 (Ind.2006)).

In this case, the evidence of record viewed in the light most favorable to McDonald are that she did not have any independent knowledge or means of acquiring knowledge regarding the status of the Check other than asking First Financial, which satisfies the first element of the equitable estoppel defense. With regard to the second and third elements, McDonald alleges that she made it clear to First Financial's employees that she did not want to "do anything" with the money from the Check until she knew the Check was good; First Financial's employees told her that they would know by Friday if the Check was good; she inquired on Friday and was told by a

First Financial employee that the check had cleared; and First Financial employees processed the wire transfer knowing that it was important for McDonald to know that the Check was good before the funds were transferred.  These facts, if credited, would support a finding that McDonald relied upon the statements of First Financial and, based upon that reliance, changed her position by wiring the money to China.

First Financial argues that McDonald nevertheless cannot prevail on her equitable estoppel claim because "'[e]quitable estoppel requires a showing that the party seeking estoppel relied to his detriment upon some intentionally misleading statement or conduct of the party to be estopped,'" First Financial Reply at 8 (quoting *Santini v. Town of New Harmony*, 624 F. Supp. 11, 14 (S.D. Ind. 1984)), and McDonald does not allege that First Financial's employees intentionally misled her.  While First Financial accurately quotes the *Santini* case, the quoted language is not an accurate statement of Indiana law.  It is true that "[t]he basis for equitable estoppel is fraud, either actual or constructive, on the part of the person estopped." *Town of New Chicago v. City of Lake Station ex rel. Lake Station Sanitary Dist.* 939 N.E.2d 638, 653 (Ind. App. 2010).  Unlike actual fraud, constructive fraud does not require the intent to mislead; rather, constructive fraud "arises by operation of law from a course of conduct which, if sanctioned by law, would secure an unconscionable advantage, *irrespective of the existence or evidence of actual intent to defraud*." *Paramo v. Edwards*, 563 N.E.2d 595, 598 (Ind. 1990) (citation omitted) (emphasis added).  Therefore "[i]t is well settled that there need not be any design to defraud in order to constitute an estoppel. It is sufficient if the conduct of the party has been knowingly such as would make it unconscionable on his part to deny what his conduct had induced another to believe and act upon in good faith and without knowledge of the facts." *Id.*

"The proper function of equitable estoppel is the prevention of fraud, actual or constructive, and the doctrine should always be so applied as to promote the ends of justice and accomplish that which ought to be done between man and man." 28 Am.Jur.2d Estoppel & Waiver § 29 (*quoted in Town of New Chicago,* 939 N.E.2d at 653). The facts of record viewed in the light most favorable to McDonald would support the application of the equitable estoppel defense in this case[3] to relieve McDonald of her liability for breach of the U.C.C. transfer warranties because she relied upon incorrect information provided to her by First Financial in deciding to wire the money when she did and it was that decision that led to the bulk of the funds from the Check being lost.[4] Accordingly, the Court finds that First Financial is not entitled to summary judgment on the issue of whether it is entitled to any damages as a result of McDonald's breach of the U.C.C.'s transfer warranties.

## IV.  CONCLUSION

First Financial's motion for partial summary judgment is **GRANTED IN PART** in that the Court finds, as a matter of law, that McDonald breached the U.C.C.'s transfer warranties when she presented the Check for deposit. First Financial's motion is **DENIED** in all other respects.

SO ORDERED: 07/27/2012

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

---

[3] Neither party did a particularly thorough job of discussing the requirements of the equitable estoppel defense under Indiana law. The Court has addressed only the arguments made by the parties and does not profess to have made a thorough examination of Indiana law on the subject.

[4] Neither party addresses the fact that First Financial has lost a few thousand dollars more than the amount of the wire transfer; the Court is unaware of when those additional funds were withdrawn by McDonald.

Copies to all counsel of record via electronic notification